IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAFAEL VALENCIA MENDOZA,

    Defendant.

No. CR 10-0734 WHA

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## INTRODUCTION

Defendant is charged with four violations of the terms of his supervised release. After an evidentiary hearing, this order finds defendant **GUILTY** of Charges One, Two, and Three, and **NOT GUILTY** of Charge Four.

## STATEMENT OF FINDINGS OF FACT

Here are the findings of the Court after an evidentiary hearing. In 2010, defendant Rafael Valencia Mendoza, then a lawful permanent resident of the United States, pled guilty to possession with intent to distribute of thirty-seven pounds of marijuana. He received a sentence of ten months in custody followed by three years of supervised release (Exh. 1; Exh. E).

On July 22, 2011, the Bureau of Prisons released him from custody and transferred him to Immigrations and Customs Enforcement custody for removal proceedings. Defendant had counsel at his removal proceedings (Tr. at 23–24). In December 2011, an immigration court in Arizona ordered him removed to Mexico, citing the conviction herein as clear and convincing evidence of his removability (Exhs. 2–3). Defendant appealed.

In March 2012, while he remained in ICE custody pending his appeal, defendant sent a letter to the probation office stating his whereabouts and expressing his intention "to comply with [his] probation or parole requirements" (Exh. 24). Probation responded to defendant's letter advising that his term of supervised release will "expire on July 21, 2014" (Exh. 25).

Meanwhile, defendant's appeals at the Board of Immigration Appeals and then at the court of appeals were unsuccessful (Exhs. 26–27). He was then deported to Mexico on August 18, 2012 (Exh. 5).

In March 2013, in California, Sheriff's Deputy Orall Massey stopped defendant for driving with a cracked windshield. At that traffic stop, Deputy Massey informed defendant his driving privileges had been suspended (Tr. at 56). One week later, in April, Deputy Massey encountered defendant again and arrested him for driving with a suspended license, for which he had already been given notice (Exh. 18).

Defendant resolved the new criminal charge by showing "proof of correction" and paying a $25 fine. The criminal charge was vacated (Exh. 19).

In May 2013, our probation office filed a Form 12 charging defendant with a violation of the terms of supervised release based on that arrest. The Form 12 also charged defendant with failing to contact his probation officer within 72 hours of reentry and with illegal reentry (Dkt. No. 23).

In May 2016, ICE arrested defendant in Ukiah (Tr. 85–86). ICE Officer Christopher Howe interviewed defendant, after advising him of his rights in Spanish (defendant's first language) and obtaining a waiver. Defendant admitted that he had reentered the United States in 2013 through Arizona by foot. He further stated that he was a citizen of Mexico and did not have permission to reenter the United States (Tr. 87–88; Exh. 6). Defendant was then deported on May 17, 2016 (Exh. 7).

In November 2016, defendant was arrested at the border in Texas. Defendant claimed to be a lawful permanent resident and presented an invalid green card. An officer referred him to secondary inspection, where several officers discovered he had previously been deported.

Defendant admitted he had been deported and that he knew he could not legally reenter as a lawful permanent resident after being deported (Tr. 93–96; Exhs. 8–9).

Defendant was charged with attempting to enter the United States by a willfully false statement in violation of 18 U.S.C. 1325(a)(3) in federal court in Texas. He pled guilty and received a custodial sentence of 180 days (Exhs. 11–12).

In December 2017, while still serving his sentence imposed in Texas, the defendant appeared here on the charges alleged in the May 2013 Form 12. In January 2017, the government amended the Form 12 to charge defendant with illegal reentry based on the events in November 2016, but later amended that charge to allege improper reentry (*see* Dkt. Nos. 29, 44).

We held a revocation hearing in March 2016. This order follows post-hearing briefing and oral argument.

**ANALYSIS**

Defendant is charged with four violation of the terms of supervised release: (1) failing to report to the probation office within 72 hours of reentry, (2) commission of a federal crime (illegal reentry in violation of 8 U.S.C. 1326), (3) commission of a state crime (driving with a suspended license in violation of California Vehicle Code § 14601.1(a)), and (4) commission of a federal crime (attempted illegal reentry in 2016 in violation of 8 U.S.C. 1325(a)(3)).

Defendant does not meaningfully dispute the facts underlying the charges in the Form 12. His primary argument is that enforcement of the terms of supervised release would be fundamentally unfair.

1. **NOTICE OF TERMS OF SUPERVISED RELEASE.**

Defendant contends that enforcement of the terms of supervised release would be fundamentally unfair inasmuch as the probation officer failed to provide him with written notice of the terms of his supervised release at any time, including upon his release.

Section 3583(f) of Title 18 of the United States Code provides:

> The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is

3

> sufficiently clear and specific to serve as a guide for the
> defendant's conduct and for such supervision as is required.

Section 3603(1) of the same title provides, in pertinent part:

> A probation officer shall — (1) instruct a probationer or a person
> on supervised release, who is under his supervision, as to the
> conditions specified by the sentencing court, and provide him with
> a written statement clearly setting forth all such conditions . . . .

In *United States v. Ortega-Brito*, 311 F.3d 1136 (9th Cir. 2002), a defendant appealed a district court's judgment revoking supervised release based on his illegal reentry following deportation. The defendant contended his supervised release should not have been revoked because he never received a written copy of the terms of his supervised release in violation of Sections 3583(f) and 3603(1) above.

Our court of appeals rejected the defendant's arguments, noting that the district court judge had engaged in a colloquy with the defendant explaining supervised release and that the judge further delineated the terms of supervised release. Because the defendant received "actual notice of the conditions" that led to his revocation, the "technical violations" of the probation officer could not justify vacating the district court's revocation order. Nevertheless, our court of appeals chastised the probation office for its failure to comply with 18 U.S.C. 3583(f) and 3603(1). *Id.* at 1139.

At our evidentiary hearing, defendant elicited testimony from Probation Officer Aldonzo Leal that defendant never received a written statement setting forth the conditions of supervised release from the probation officer, and that no one at the probation office explained the terms in more specific detail or with greater clarity than they were stated at defendant's sentencing (Tr. at 36). Nevertheless, the special conditions of supervised release were read at sentencing (at which defendant had a translator present) and set forth in writing in the judgment (Exhs. 1, 21). Specifically, the term regarding reporting to the probation office upon reentry was read aloud to defendant and set forth as follows (Exhs. 1 at 4, 21 at 7):

> Upon release from imprisonment, the defendant will be deported.
> If for some reason he is not deported and remains in this country or
> returns to this country, legally or illegally, he shall be on
> supervised release and report to the nearest probation office within
> 72 hours of release or reentry.

4

Similarly, the judgment set forth the condition that "the defendant shall not commit another federal, state or local crime," and the same condition was stated at the sentencing hearing (Exhs. 1 at 3, 21 at 7).

It is unfortunate that our probation office has still failed to heed the admonition of our court of appeals in *Ortega-Brito* (though it appears that had defendant not been deported, he would have received written notice of the conditions of release at his first meeting with his probation officer), but there can be no doubt that our defendant *did* receive actual notice of the conditions of his supervised release. They were read to him at a hearing at which he had counsel and a translator. Indeed, he proactively complied with those conditions when he informed the probation office of his whereabouts after leaving the custody of the Bureau of Prisons.

Defense counsel responds that defendant was confused about the purpose of the sentencing hearing. In his statement before sentencing, defendant stated (Exh. 21 at 5):

> I just want to say that I accept the sentence that you give me. But I just want to ask you please not to deport me, because I have my children here and my family here.

Counsel then explained that defendant appeared confused, but then stated (*ibid.*):

> But Mr. Mendoza needs to be reminded that your Honor won't be making any decision whether he will be deported or not. That will be for a different judge to decide.

The undersigned judge then explained in greater detail how the sentencing and a separate judge's removal decision would work, concluding (*id.* at 6):

> I will fashion a supervised release condition that would come into play if you were somehow in this country and did not get deported. I will put that as part of the sentence, but it's not my decision on deportation. That is a different immigration judge, and an immigration court will have to decide that.

The undersigned judge then proceeded to read the conditions of supervised release, as set forth above. Defendant's confusion, if any, about his possible deportation at the sentencing does not render his actual notice of the conditions of supervised release a nullity. Indeed, immediately after his release from the custody of the Bureau of Prisons (when he came into ICE

5

custody), he informed the probation office of his whereabouts, indicating his comprehension of the condition that he report to the probation office.

Defendant states our circumstances are not as clear-cut as those in *Ortega-Brito* because there, the judge separately explained to the defendant "If you do something wrong, you go back to jail" and the defendant confirmed he understood. True, no such colloquy occurred here, but our court of appeals did not identify that (or any specific circumstance) as the *sine qua non* of its decision.

Notwithstanding that superficial distinction between our case and that in *Ortega-Brito*, there is no fundamental unfairness in holding our defendant responsible for violating the conditions of his supervised release. Nevertheless, in the future, the probation office should heed the warning of our court of appeals and it should develop procedures that more clearly conform to Sections 3583(f) and 3603(1) for all supervisees.

The issue of defendant's notice regarding the application of the terms of supervised release beyond our borders is discussed below in connection with Charge Four. This order need not address the issue of the probation office's failure to inform defendant that the July 21, 2014, termination date stated in a letter remained subject the possibility of tolling inasmuch as this order rejects the only charge alleged that occurred after that date.

### 2. REENTRY IN 2013.

There is simply no dispute. Defendant, a citizen of Mexico and not of the United States, admitted that he knowingly reentered the country illegally in 2013 without consent, after his removal in 2012. This constituted illegal reentry in violation of Section 1326 of Title 8 of the United States Code. Accordingly, defendant is **GUILTY** of Charge Two of the second amended Form 12.

### 3. FAILURE TO REPORT.

Charge One of the Form 12 alleges that defendant "violated the condition of his supervised release which states, in part, that if the offender is deported and returns to this country, he shall report to the nearest probation office within 72 hours of reentry." Specifically, after defendant was deported in August 2012 he reentered sometime before April 2013, yet

6

never reported to the probation office. The Form 12 further alleges that "as of this date, the offender has not reported to the U.S. Probation Office to notify of his release from custody and his presence in the United States" (Dkt. No. 44 at 2).

Defendant disputes the latter allegation, noting that he did in fact write to the probation office in March 2012, advising that upon release from the custody of the Bureau of Prisons, he was picked up by ICE (Exh. 24). True, but defendant's contact with the probation office *before* his deportation has no bearing on his failure to report within 72 hours of reentry *after* his deportation.

The uncontroverted testimony of Probation Officer Aldonza Leal shows that defendant never contacted the probation office advising of his reentry. Accordingly, this order finds him **GUILTY** of Charge One.

### 4. DRIVING WHILE LICENSE SUSPENDED.

The credible and uncontested testimony of Deputy Massey establishes that defendant committed a state crime by driving while his license was suspended after having been informed of that suspension the prior week. It is of no moment that defendant was ultimately charged and convicted of a lesser offense. The facts show that defendant *committed* the offense in question, and so he is **GUILTY** of Charge Three.

### 5. ATTEMPTED REENTRY IN 2016.

In 2016, defendant was convicted of attempted unlawful entry in violation of Section 1325(a)(3) of Title 8 of the United States Code in federal court in Texas. The government offers the certified copy of the judgment, in evidence here as Exhibit 12, as conclusive proof of that violation of the law and therefore of the terms of supervised release. *United States v. Garcia*, 771 F.3d 1359, 1371 (9th Cir. 1985).

Defendant does not dispute the facts or his conviction. Instead, he contends he was not subject to supervised release when he committed this offense.

As stated, at sentencing, the undersigned judge read the following excerpt from the judgment (Exhs. 1 at 4, 21 at 7):

> Upon release from imprisonment, the defendant will be deported.
> If for some reason he is not deported and remains in this country or

7

> returns to this country, legally or illegally, he shall be on
> supervised release and report to the nearest probation office within
> 72 hours of release or reentry.

That paragraph did not address whether defendant would be subject to supervised release while in Mexico. That omission is the main bugaboo..

Our court of appeals has held that "[a]n alien does not reenter, and cannot be considered found in, the United States until he or she is physically present in the country and free from official restraint." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1191 n.3 (9th Cir. 2000). All agree that "deportation does not extinguish a term of supervised release." *United States v. Ramirez-Sanchez*, 338 F.3d 977, 981 (9th Cir. 2003). All further agree that our defendant was denied entry at the border and arrested in November 2016, and that his presence in the United States from then until the present has been continuously subject to official restraint. Accordingly, for the purpose of resolving Charge Four of the second amended Form 12, the conduct at issue — the attempted illegal reentry — occurred *in Mexico*. Yet, our defendant had been informed only that "he shall be on supervised release" if "he is not deported and remains in this country or returns to this country, legally or illegally."

This order assumes, without deciding, that this Court has jurisdiction to enforce the terms of supervised release against a supervisee residing abroad. *Cf. United States v. Biggs*, 314 Fed. Appx. 977, 979 (9th Cir. 2009). Nevertheless, we did not fairly advise defendant that supervision would apply in Mexico. Nor did any statement to our defendant give notice that the terms of supervision would extend beyond our borders.

The government cites *United States v. Gomez-Infante*, 546 F. Supp. 2d 691 (D. Ariz. 2008) (Judge Jennifer Guerin), for the proposition that a defendant convicted of attempted reentry may yet be liable for a Form 12 violation notwithstanding his reentry via official restraint. But that decision never addressed whether the judgment therein or the notice given to the defendant stated that the terms of supervision extended beyond our borders. The issue there was whether the allegations of the Form 12 adequately informed defendant notice that his conviction would be used to prove a violation of the condition of not committing another

8

federal crime (rather than the facts underlying the conviction). Thus, *Gomez-Infante* is simply not on point.

Our defendant was not told that he would be under supervision in Mexico, so it would be unfair to penalize him for crimes committed in Mexico. Accordingly, this order finds him **NOT GUILTY** on Charge Four.

## CONCLUSION

This order finds defendant **GUILTY** of Charges One, Two, and Three, as alleged in the second amended Form 12 and **NOT GUILTY** of Charge Four. Sentencing will occur on **MAY 12 AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: April 27, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE